UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:08CV-P186-R

**TIMOTHY DAWAYNE ROUSE, JR.** *et al.*                          **PLAINTIFFS**

**v.**

**STEVE HILAND** *et al.*                                        **DEFENDANTS**

## MEMORANDUM AND ORDER

Plaintiff Timothy Dawayne Rouse, Jr., sole remaining Plaintiff, filed *pro se* motions for preliminary injunctive relief (DN 19), to strike Defendant's answer to his motion for preliminary injunctive relief (DN 33), and for protective order (DN 40). For the reasons that follow, the motions will be denied.

### I.

In the motion for preliminary injunctive relief, Plaintiff asks the Court to issue a restraining order against sole remaining Defendant Dr. Hiland and non-defendant Officers Donald Wellham and Gibbs ordering that those individuals have no contact with Plaintiff and ordering that Plaintiff be transferred to Green River Correctional Complex until final disposition of this case (DN 19). By affidavit Plaintiff reports that on August 4, 2009, Defendant Dr. Hiland "had Officer Gibbs to assault me"; he describes the assault; and he avers that "I fear for my life as a result hereof."

The Court directed Defendant Dr. Hiland to file a response. Therein, Defendant Dr. Hiland argues that the August 4, 2009, incident never happened and attaches affidavits from himself and Lt. Gibbs in support (DN 32). He additionally argues that Plaintiff is effectively attempting to file a motion to amend to add a new claim and new defendants, which is improper

under Fed. R. Civ. P. 15 as it is without leave of court and is futile because Plaintiff failed to exhaust his administrative remedies as to the claim.

Plaintiff filed a reply asking the Court to strike Defendant's response as untimely and arguing that the evidence proves that the incident happened and that he is not amending his complaint and, therefore, is not required to exhaust remedies (DN 33). He additionally asserts a new incident which allegedly occurred on September 26, 2009, alleging that Defendant Dr. Hiland directed, and non-defendant Officer Gibbs made it possible for, an unknown person to sexually assault Plaintiff in retaliation for filing the instant lawsuit. Plaintiff advises that he was suppose to take an STD test after the assault but that Dr. Hiland has refused to provide such test. By affidavit, Plaintiff advises that on September 21, 2009, five days before the assault, "Dr. Hiland told the other person he needed to 'take care of me that I was a snitch.' The other person stated he would." Plaintiff avers that he heard the conversation between Dr. Hiland and the other person.

In the motion for protective order, Plaintiff asks the Court to order Defendant Dr. Hiland and non-defendants Sgt. Tammi Darnell, Officer Donald Wellham, and KSP Warden Parks "not to touch, disclose or destroy any legal documents that are part of his case and which are currently in the custody of Plaintiff, and to order that these parties have no contact with Plaintiff or his persons until final dispostion of this case" (DN 40). In an affidavit attached to the motion, Plaintiff states that on October 22, 2009, "Steve Hiland told Warden Parks that I had material Legal documents in my cell that needed to be disposed because it would strenth my case." Warden Parks then ordered officers go to Plaintiff's cell and "strip search [him] and sexual touch [him] just to see if [he] had legal documents on [his] persons." The officers seized "a lot" of Plaintiff's legal documents that were part of this case. Also on October 22, 2009, avers Plaintiff,

2

Tammi Darnell had Officer Crank and another officer to go to Plaintiff's cell to "sexual touch" Plaintiff, and, after so doing, Officer Crank went through Plaintiff's legal work and took some of it. On the following day, according to Plaintiff, two officers came to his cell and stated "they want every document that relates to Dr. Steve Hiland, when I refused to give them these documents I was assaulted causing me breathing problems and bruises." That same day, a disciplinary report was issued due to Plaintiff's having those legal documents in his possession, and later that day, five guards went to Plaintiff's cell "and assaulted [him] at the direction of Dr. Steve Hiland, and Warden Parks."

## II.

Finding no prejudice to Plaintiff in Defendant's untimely filing of his response to Plaintiff's motion for preliminary injunctive relief, the Court will deny Plaintiff's motion to strike. For the following reasons, the Court will deny Plaintiff's motion for preliminary injunctive relief and motion for protective order.

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban County Gov't.*, 305 F.3d 566, 573 (6th Cir. 2002). "There are four factors that are particularly important in determining whether a preliminary injunction is proper." *Int'l Longshoremen's Ass'n, AFL-CIO, Local Union No. 1937 v. Norfolk S. Corp.*, 927 F.2d 900, 903 (6th Cir. 1991). They are:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.

*Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005).

The Court finds that a preliminary injunction is not warranted because Plaintiff cannot succeed on the merits. Although no single factor is controlling when determining whether a preliminary injunction should issue, the likelihood of success on the merits is often the predominant consideration. *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000) ("[A] finding that there is simply no likelihood of success on the merits is usually fatal."); *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997) ("[W]hile, as a general matter, none of [the] four factors are given controlling weight, a preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed.").

As to Plaintiff's claim that his legal materials are being destroyed or taken away from him, Plaintiff has not shown any actual injury to the instant litigation. *See Lewis v. Casey*, 518 U.S. 343, 356 (1996) (explaining that no actual injury occurs without a showing that such a claim "has been lost or rejected, or that the presentation of such a claim is currently being prevented"). Plaintiff additionally fails to list any documents he claims has been destroyed and that he needs for the current litigation.

With respect to the assault/retaliation claims, Plaintiff has also failed to meet his burden of showing a strong likelihood of success on the merits. "[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). As to the first incident allegedly occurring in August 2009, Plaintiff avers that Defendant Dr. Hiland "had Officer Gibbs to assault me." Similarly, with respect to the incidents allegedly occurring in October 2009, Plaintiff avers that "Steve Hiland told Warden Parks that I had material legal documents in my cell that needed to be disposed because it would strenth my case." He does not indicate that he heard the exchanges himself or that he was advised by someone else who averred

4

hearing these conversations. He fails to point to any specific facts that Dr. Hiland had anything to do with these alleged incidents. While Plaintiff avers, with respect to alleged assault in September 2009, that he heard Defendant Dr. Hiland tell an unknown person to "take care of" Plaintiff because he was a snitch, Plaintiff fails to provide sufficiently stringent proof of Dr. Hiland's direction of harm against him. Plaintiff fails to allege any details surrounding his overhearing of this verbal exchange, such as where Plaintiff was located when the conversation occurred; how Plaintiff, a prisoner, was privy to that conversation at that very particular time and place; or anything more than a broad statement that he heard the exchange. Nonetheless, Plaintiff must, despite his claim to the contrary, exhaust his available administrative remedies prior to raising any new claim, even one alleging excessive force. *Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). While the Court is not without concern as to Plaintiff's allegations, Plaintiff has not demonstrated that the relief sought is appropriate under the instant circumstances. Should Plaintiff wish further review as to these matters, he must file a new action pursuant to 42 U.S.C. § 1983 following exhaustion of available administrative remedies alleging retaliation and/or excessive force by Dr. Hiland, the non-defendants mentioned in his motions, and any other purported wrongdoers.

## III.

For the foregoing reasons, **IT IS ORDERED** as follows:

(1) Plaintiff's motion to strike Defendant's response to the motion for preliminary injunction (DN 33) is **DENIED**;

(2) Plaintiff's motion for preliminary injunction (DN 19) and motion for protective order (DN 40) are **DENIED**; and

(3) The **Clerk of Court is DIRECTED to send Plaintiff a § 1983 form** for his use should he wish to file a separate action raising his claims of retaliation and excessive force.

Date:

cc: Plaintiff Rouse, *pro se*
 Counsel of record
4413.005