UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:08CV-P186-R

**TIMOTHY DAWAYNE ROUSE, JR.** *et al.*                                   **PLAINTIFFS**

**v.**

**STEVE HILAND** *et al.*                                                                         **DEFENDANTS**

### MEMORANDUM AND ORDER

Plaintiff moves this Court for an emergency preliminary injunction directing Defendant Dr. Steve Hiland to test him for all sexually transmitted diseases or to refer him to an outside provider for testing (DN 79). Defendant filed two motions for extension of time to file a response (DNs 88 & 90), to which Plaintiff filed no objection. Upon consideration, **IT IS ORDERED** that the motions for extension (DNs 88 & 90) are **GRANTED.** Defendant's response (DN 94) is timely. Plaintiff filed a reply (DN 104). This matter is ripe for review. For the reasons that follow, the motion for emergency injunction will be denied.

### I.

Plaintiff claims that on February 16, 2010, Chanin Hiland[1] "engaged in a conspiracy with Steve Hiland to deny me my right to medical treatment, care, and examination in retaliation for me filing this present suit against Steve Hiland, and one against [Chanin] Hiland." He reports that on that date, he signed up for "medical sick call" and complained of night sweats from the waist down and that "his body was buring on the inside." Plaintiff claims, however, that Defendant Dr. Hiland concluded that his injuries did not warrant any examination or treatment,

---

[1]Plaintiff identifies this non-defendant as "China Hiland," but Defendant clarifies that her name is "Chanin Hiland."

"even though [according to Plaintiff] the injuries were serious and a (S.T.D.) sexual transmited disease." Plaintiff reports that on the next day, February 17, 2010, "medical" was called to Plaintiff because he could not breathe out of his nose. He further reports that Nurse Lori determined that he needed an antibiotic but that Defendant Dr. Hiland refused to order medicine in retaliation. Plaintiff claims that Defendant Dr. Hiland has "repeatedly refused Plaintiff medical treatment and services in a attempt to 'kill' Plaintiff to get him out of the way from current lawsuits against him." Plaintiff additionally claims that Defendant Dr. Hiland poisoned him once with medication. As a result of Defendant's actions, opines Plaintiff, his "immune system has been injured, he has permenent night sweats, he suffers buring pains on the inside, and has loss 40 lbs that steady intends to decrease."[2]

Plaintiff attaches an affidavit from Eric Jones, a neighboring inmate, who avers that he has personally witnessed Plaintiff having a medical disorder and Dr. Hiland refusing to treat him.

**II.**

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban County Gov't.*, 305 F.3d 566, 573 (6th Cir. 2002). "There are four factors that are particularly important in determining whether a preliminary injunction is proper." *Int'l Longshoremen's Ass'n, AFL-CIO, Local Union No. 1937 v. Norfolk S. Corp.*, 927 F.2d 900, 903 (6th Cir. 1991). They are:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether

---

[2]In an attached unsigned and undated affidavit, Plaintiff also advises that he experiences pain with urination and has blood in his urine. He does not allege that he told Dr. Hiland of these symptoms, and the submitted medical records do not indicate any such complaints.

issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.

*Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005).

The Court finds that a preliminary injunction is not warranted because Plaintiff cannot succeed on the merits. Although no single factor is controlling when determining whether a preliminary injunction should issue, the likelihood of success on the merits is often the predominant consideration. *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000) ("[A] finding that there is simply no likelihood of success on the merits is usually fatal."); *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997) ("[W]hile, as a general matter, none of [the] four factors are given controlling weight, a preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed.").

Plaintiff generally alleges a conspiracy between non-defendant Chanin Hiland and Defendant Dr. Steve Hiland. "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). Plaintiff simply has not shown that there was a single plan, that the alleged conspirators shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury. *See Hooks v. Hooks*, 771 F.2d 935 (6th Cir. 1985). He cannot, therefore, demonstrate a likelihood of success on the merits of any conspiracy claim.

Plaintiff next alleges that Defendant Dr. Hiland violated the Eighth Amendment "by denying me medical service or examination in retaliation." He, thus, commingles an Eighth

3

Amendment claim of deliberate indifference to a serious medical need with a First Amendment retaliation claim.

With respect to the Eighth Amendment claim, Plaintiff claims that he requires STD testing because on February 16th he had complaints of night sweats from the waist down and burning on the inside of his body and because on February 17th he could not breathe out of his nose. By affidavit filed in response to Plaintiff's motion, Defendant Dr. Hiland avers that on the morning of February 16, 2010, he conducted a sick call in Plaintiff's segregation unit, accompanied by Chanin Hiland, ARNP, and Terri Jones, RN. Dr. Hiland reports:

> Inmate Rouse was seen by me at sick call on the morning of February 16, 2010. He complained of experiencing unpleasant sensations of burning inside and sweating from the waist down. He was not able to offer much detail, but he expressed his belief that the episodes somehow proved that he was suffering from unspecified sexually transmitted diseases ("STDs"), and he demanded immediate testing for all manner of STDs. Upon medical evaluation, Inmate Rouse did not exhibit any discernable symptoms of STDs, nor did he describe any particular symptoms that would support a medical diagnosis of STDs. Furthermore, Inmate Rouse's medical record contained no documentation of any history of STDs, or that Inmate Rouse had ever been exposed to any of the common risk factors that would place him at risk for contracting STDs.

(DN 94, Aff.). Dr. Hiland concluded that it was his medical judgment that STD testing was no necessary or indicated and that no new medical orders would be issued at that time.

As to the February 17th incident, Dr. Hiland avers that he did not conduct sick call in Plaintiff's unit on that date, "nor did anyone notify me or consult with me about any of the medical complaints described in [Plaintiff's] medical record from February 17, 2010 relating to the alleged dizziness and difficulty standing and breathing."[3] Dr. Hiland further avers that there

---

[3]Dr. Hiland notes, and a medical record reveals, that Nurse Lori Secoy, LPN, went to Plaintiff's unit to check on him following notification of his complaints about not being able to breathe. Plaintiff advised the nurse that he had difficulty breathing through his nose but that he could breathe out of his mouth. He denied nasal congestion and dizziness at that time and was given Tylenol for a headache. In

4

is no medical reason to conclude that the complaints of February 16 and 17 were medically related.

In the context of a § 1983 claim for inadequate medical care, prison personnel violate a prisoner's civil rights if they are deliberately indifferent to the prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976). However, not every claim of inadequate medical treatment states an Eighth Amendment violation. *Id.* at 105. The indifference must be substantial; that is, it must be an offense to evolving standards of decency. *Id.* at 106. A patient's disagreement with his physician over the proper medical treatment alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is not cognizable under § 1983. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 816 n.13 (6th Cir. 1996); *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995). The question of whether diagnostic techniques or other forms of treatment are indicated is a classic example of a matter for medical judgment. At most, a medical decision not to order an x-ray or like measures represents medical malpractice. *Estelle*, 429 U.S. at 107. Furthermore, allegations of "inadvertent failure to provide adequate medical care" or of a negligent diagnosis or treatment of a prisoner fail to state a cause of action. *Id.* at 105-06. Simply stated, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id*. at 106.

Essentially, Plaintiff's allegations concern a disagreement with Dr. Hiland's medical decision not to order STD testing. Dr. Hiland saw Plaintiff on February 16th and determined that no further examination or testing was needed, given that Plaintiff did not present with

---

his affidavit, Dr. Hiland opined that it is his medical opinion that Plaintiff's alleged complaints were not indicative of a medical emergency or any other kind of serious medical condition that would require further treatment beyond that provided by the medical staff.

symptoms of any STD, that he had no documented history of any STDs, and that he had not reported being exposed to the common risk factors placing him at risk for contracting STDs. *See Estelle*, 429 U.S. at 107 (holding that a medical decision not to order a particular treatment does not violate the constitution but may support a state law claim for malpractice); *Chapman v. Parke*, No. 91-5841, 1991 WL 203080, at *2 (6th Cir. Oct. 4, 1991) ("[A] difference of opinion regarding treatment or his need for surgery is insufficient to state a claim under the Eighth Amendment."). Moreover, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (citations omitted). Plaintiff has failed to demonstrate that Defendant Dr. Hiland was deliberately indifferent to a serious medical need in denying him STD testing. *See Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) ("[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion.").

As to Plaintiff's claim that Defendant Dr. Hiland retaliated against him for filing federal lawsuits, Plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

Accessing the courts by filing federal lawsuits is protected conduct. However, while the denial of medical treatment may constitute an adverse action, Plaintiff has not shown that he has been denied necessary medical treatment; although he did not receive the treatment he desired, he was seen by Dr. Hiland on February 16th and was seen on an emergent basis by a nurse on

6

February 17th.  Finally, Plaintiff has wholly failed to show any causal connection between his filing of federal lawsuits against Defendant Dr. Hiland and the physician's purportedly inadequate medical treatment.

For these reasons, the Court concludes that Plaintiff has failed to show a likelihood of success on the merits as to the claims asserted in the motion for preliminary injunction.

Plaintiff further fails to establish irreparable harm as there must be an actual, viable, presently existing threat of serious harm.  *Massachusetts Coalition of Citizens with Disabilities v. Civil Def. Agency and Office of Emergency Preparedness of the Commonwealth of Massachusetts*, 649 F.2d 71, 74 (1st Cir. 1981).  The plaintiff must show injury that is not remote or speculative, but is actual and imminent.  *United States v. W. T. Grant Co.,* 345 U.S. 629, 633 (1953).  The injury must be of such imminence that there is a clear and immediate need for relief in order to prevent harm.  *See Wisconsin Gas Co. v. Fed. Energy Regulatory Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985).  Here, the Court has concluded that Dr. Hiland was not deliberately indifferent to any serious medical needs in not ordering STD testing based on Plaintiff's allegations of the events on February 16th and 17th.

For all the foregoing reasons, **IT IS ORDERED** that Plaintiff's motion for preliminary injunction (DN 79) is **DENIED.**

Date:


cc:    Plaintiff Rouse, *pro se*
       Counsel of record
4413.005

7